UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED
2023 NOV 27  A 11: 00

| UNITED STATES OF AMERICA, | CRIMINAL NUMBER: |
|---|---|
| v. | 2:19-cr-00770-SDW |
| ANKUR AGARWAL, | |
| DEFENDANT, pro se | MOTION TO REDUCE SENTENCE |

Hon. Judge Susan D. Wigenton:

Pursuant to Section 3582(c)(2) of Title 18, United States Code, Petitioner Ankur Agarwal, Register # 71563-050, moves pro se that the court grant Motion To Reduce Sentence based on a sentencing range which has been lowered by Amendment 821 to the US Sentencing Guidelines (USSG) and made retroactive.

## I. Petitioner Establishes Eligibility for Retroactive Application of Amendment 821

USSG §4C1.1 as amended by Amendment 821 sets forth the definition of "zero-point offender" and the criteria which must be met to be eligible for a two-level downward adjustment. The court would apply USSG §4C1.1 in accordance with USSG §1B1.10 as amended by the 2023 amendment to that policy statement. Criteria and applicability to Petitioner's case are discussed below.

A. Definition

§4C1.1(A) defines "zero-point offender" as one where "the offender was assigned zero criminal history points under USSG §4A1.1(a-e) when initially sentenced." Petitioner has 0 criminal history points.

B. Eligibility Criteria

   i. USSG Specification

§4C1.1(B) specifies offender shall not be excluded by any of the eligibility criteria, as follows:

(1) the court did not apply the adjustment at USSG §3A1.4 (Terrorism) for any guideline calculation in connection with the offense;
(2) the defendant did not use violence or credible threats of violence in connection with the offense;
(3) the offense did not result in death or bodilty injury;
(4) no count of conviction was a sex offense;
(5) the defendant did not personally cause substantial financial hardship;
(6) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(7) the court did not apply any of the guidelines in USSG Chapter 2, Part H, Subpart 1 in connection with the offense;

(8) the court did not apply the adjustment under USSG §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or the adjustment under USSG §3A1.5 (Serious Human Rights Offense) for any guideline calculation in connection with the offense;
(9) the court did not apply the adjustment under USSG §3B1.1 (Aggravating Role) for any guideline calculation in connection with the offense; and
(10) no count of conviction was 21 U.S.C. §848.

### ii. Discussion of Applicability

The eligibility criteria -- above, at Part IB(i) of this motion -- are discussed for Petitioner's case in order:

(1) The court did not apply any terrorism adjustment;
(2) Petitioner's offense was non-violent;
(3) the offense was non-violent;
(4) the offense was not a sex offense;
(5) Petitioner did not cause financial hardship and the court did not apply any enhancement for financial hardship;
(6) Petitioner did not use any firearm or weapon;
(7) the court did not apply §2H1.1 guidelines;
(8) the court did not adjust under USSG §3A1.1 or §3A1.5;
(9) the court did not adjust under §3B1.1; and
(10) Petitioner's counts of conviction were §1030 and §1028A.

C. Guidelines Range Policy Statement

Subdivision (b)(2)(A) of USSG §1B1.10 states:

> Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 USC §3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range.

Petitioner's original sentence -- 94 months -- is greater than the minimum of Petitioner's amended guideline range -- 81 months (computed below, at Part IV of this motion).

D. Determination

Petitioner's case is determined to be eligible for retroactive application of Amendment 821.

## II. Procedural History

Petitioner is currently incarcerated at FCI Ft. Dix. Petitioner pled guilty to two counts of 18 USC §1030 Computer Fraud and one count of 18 USC §1028A Aggravated Identity Theft on October 22, 2019 in front of Judge Susan D. Wigenton, Third Circuit. On September 1, 2020, Petitioner was sentenced to a term of 94 months. Petitioner self-surrendered to FCI Ft. Dix on December 18, 2020. At the time of this Petition, Petitioner has served 35 months of the 94 month sentence.

### III. Inmate Progress Report

While incarcerated, Petitioner has had a positive work record, no disciplinary issues, and programmed and passed all required of him.

To incentivize recidivism reduction, the First Step Act (FSA) -- 18 USC §3632(d) -- allows the Bureau of Prisons (BoP) to assess an inmate's need and develop innovative programming. Notably, assessment began prior to the BoP. Petitioner self-undertook therapy in his hometown of Montville, NJ. The therapist, Paivi Outinen, performed clinical testing to help him identify obsessive/compulsive tendencies. Based on the tests, she was able to supervise therapy for short periods of time. As time ran out leading to self-surrender, she recommended specific therapy which might be beneficial in a letter to the Court incorporated into Petitioner's July 10, 2020 sentencing memo. Informed with Ms. Outinen's recommendation as well as BoP's own assessment, Petitioner's Case Manager fashioned programming which would move forward Petitioner's therapy. Particularly beneficial programming which he completed was "Thresholds" (Exhibit D) -- a BoP-wide program with the stated goal of "seeking grounding in positive values." Thresholds adopted an "Alcoholics Anonymous" model whereby participants are part of a larger community which supports dedication to "sobriety" from compulsive behavior. The Program provided a confidential setting to let Petitioner speak openly to other like-minded inmates - conversations which he could not even have with close family. Participants were like-minded because they all broke the law and were also like-minded because they pledged not to find themselves in a situation again where they would break the law. Sharing his wrong-doing and pledge with the group at-large, Petitioner was able to find freedom from judgment and shame ironically in prison. Completing the Program is only the beginning of a longer-term rebuilding effort. He expects staying on the path for the long-term.

Before his incarceration, Petitioner worked for 22 years. He was eager to continue working because not only would work reiterate a routine successful in the workplace, but would also lead to a stable, consistent, and fruitful day. Absence of the office environment with its concomitant hustle-and-bustle would also give Petitioner a quiet chance to re-focus and quality time to get re-acquianted with nature. His work assignment was the Inmate Labor Program at the adjacent military base -- Joint Base MacGuire Dix Lakehurst. It just so happens, he joined during COVID-19 pandemic. After being released from six months of quarantine, it felt like an act of compassion to be able to breathe the fresh air. He wanted to spend whatever time given to breathe the fresh air -- to be a stalwart friend of nature. The Inmate Labor Program gave an active outlet for both work and breathing the fresh air. His duty were both housekeeping for the barracks and landscaping on the expansive acres. Petitioner provides the Court a commendation from Officer Reid in the form of a Positive Decision Report (PDR) which details his work productivity and attitude (Exhibit A). The PDR illustrates Petitioner's ability to take on added responsibility and service-minded attitude in day-to-day work.

Petitioner has found closure in accepting responsibility. The most

agonizing hurdle was saying "I'm sorry." It was not the vicissitudes of life, a plan not going according to plan, or some other adversity which caused his predicament. He had to accept responsibility for his own actions. Hard as it was, he was able to clear the hurdle and say sorry to the Court. But it was also a relief. As he said before the Court (Sentencing Hearing, Statement by the Defendant):

> It gave me a path forward. It lifted something off my body. It freed my conscience of a burden that I had.

He is no longer agonized by saying sorry or by accepting responsibility.

## IV. §3553(a) Factors Warrant Reduction

When a petitioner is eligible for sentence reduction, "the court may reduce the term of imprisonment, after considering the factors set forth in 3553(a) to the extent they are applicable"(18 USC 3582(c)(2)).

Although the seriousness of the offense led the Court to impose its original sentence, the sentence purpose of just punishment did not consider exposing Petitioner to the harsh conditions at FCI Ft. Dix. Neither the Petitioner nor Court could anticipate real threat to at-risk inmates of serious illness or death caused by the prevalenc of COVID-19 virus in a prison housing environment in which it was not possible to follow CDC protocols to protect oneself. And the COVID-19 outbreak at Ft. Dix was the harshest within the BoP. Within 2 weeks of Petitioner's self-surrender, fellow Ft. Dix camp inmate Myron Crosby and subsequently inmate Dominick Pugliese both tragically died due to COVID. As late as September 2021, the BoP COVID locator reported 768 infected cases at FCI Ft. Dix. As a result, Ft. Dix operated at COVID-19 Level 3, meaning significant restrictions were placed. Petitioner's friends and family were not able to visit for over a year. Movements were restricted for outdoors and work details were suspended. At the current juncture, the harsh conditions have improved as Petitioner has been inoculated with four doses of vaccination, and himself contracted COVID-19 multiple times thereby conferring further immunity. The COVID-19 virus provides a contemporary example of German philosopher Friedrich Nietzsche's 1888 concept of superhuman will, whereby "that which does not kill you makes you stronger." Although Petitioner has emerged on the other side of the COVID-19 outbreak "stronger", the preponderance of his time served has been during the COVID-19 outbreak.

As Petitioner's crime was committed against his former employers and an affront to the professional standards of the telecommunications industry, he has become a poster child. In the small world of telecom, his story is well-known. His conviction was untimely as it likely bars him from the industry and effectively wipes away 22 years of experience. For the reason above, the story was, is, and continues to be a prime candidate furthering the sentencing purpose of "afford[ing] adequate deterrence to criminal conduct." Notably, with respect to specific deterrence, Petitioner is no longer in the industry and no longer able to return and unlikely to commit a criminal offense in the future.

Acknowledging the reality of being unable to return, Petitioner began

pursuing an "Act II." He immediately undertook vocational programming at the BoP, whereby he completed a certificate in Culinary Service (Exhibit B), landscaping, and welding (pending). Although not a certificate program, he took 64 Technical Program Curriculum (TPC) Classes to upgrade his knowledge in the allied profession of Electrician (Exhibit C). While knowledge is no substitute for experience he clearly understands increased knowledge will provide a requisite base and lead to increased chances for a job. Improving himself for successful re-entry into the working world and securing a stable job for himself and his family is his key focus and goal.

If the Court grants a 2-level reduction, then Petitioner's Guidelines point level lowers from 27 to 25, which with the mandatory 24-month consecutive obligation, lowers his Guidelines range from 94-111 months to 81-95 months - a 13 month difference in the bottom of the range. Currently, Petitioner's release date after applying 365 days earned FSA credit and 423 days Good Conduct Time (GCT) is August 13, 2026. Re-computing the numbers with an 81-month sentence changes the release date to September 10, 2025 - an 11 month difference. In assessing the sixth factor of 18 USC §3553(a), not giving a 2-level reduction would contradict the goal of "avoiding unwarranted sentencing disparities." If the Petitioner had been sentenced under the revised Guidelines, his sentence would have been substantially disparate.

V. Conclusion

As demonstrated by the Sentencing Transcript, the Court carefully considered relevant factors, including §3553(a) factors, when determining Petitioner's sentence. The 2-level reduction as authorized by USSG does not require departing from previously articulated sentencing findings. Subdivision (b)(1) of USSG §1B1.10 states (emphasis added):

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 USC §3582(c)(2),... the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced <u>and shall leave all other guideline application decisions unaffected</u>.

Further, petitioner has demonstrated eligibility as a "zero-point offender", progress toward re-entry, and §3553(a) reasons he is entitled to retroactive application of the Amendment. Petitioner requests the Court to grant the Motion and order the sentence lowered from 94 to 81 months.

Respectfully submitted,

*C. Ag* (signature)

Ankur Agarwal, pro se
Reg #71563-050

## Certificate of Service

### Court Clerk

United States District Court
District of New Jersey
Martin Luther King, Jr.
Federal Bldg and US Courthouse
50 Walnut Street
Room 4015
Newark, New Jersey 07102

Certified Mail Number:
7019 0700 0001 1873 4828

### US Attorney's Office

Clara Kim, AUSA
970 Broad Street
Suite 700
Newark, New Jersey 07102

via First Class Mail

Respectfully submitted,

_(signature)_

Ankur Agarwal, pro se
Reg. #71563-050
FCI Ft. Dix Satellite Camp
PO Box 2000
Joint Base MDL, NJ  08640

Date: November 15, 2023